FILED
2013 Oct-18 PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRANCH BANKING AND TRUST COMPANY,** Successor in Interest to **COLONIAL BANK** by asset acquisition from FDIC as Receiver for Colonial Banks, | ) ) ) ) ) ) ) |
| Plaintiff | ) |
| v. | ) ) |
| **DANIEL TODD McDONALD, DENISE T. McDONALD, CASEY T. McDONALD, HENRY WAYNE ADAMS, ALABAMA POWER COMPANY,** and **FIRST SOUTH FARM CREDIT, ACA** | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 2:13-CV-000831-KOB

## MEMORANDUM OPINION

This matter comes before the court on the motions to dismiss of Defendants Daniel Todd McDonald, Denise T. McDonald, Casey T. McDonald, (doc. 13) and Henry Wayne Adams (doc. 21). Plaintiff Branch Banking and Trust Company ("BB&T") claims that the McDonald Defendants have failed to pay an indebtedness under a Commercial Promissory Note secured by a Real Estate Mortgage. BB&T also lists Alabama Power Company, First South Farm Credit, ACA, and Henry Wayne Adams, as defendants who may claim an interest in or lien upon the real property described in the Mortgage. The individual Defendants (separate from the corporate Defendants) move to dismiss for lack of standing and on statute of limitations grounds, among others. For the following reasons, the court will DENY the individual Defendants' motions to dismiss.

I.      FACTS

On or about November 15, 2004, Defendant Daniel Todd McDonald executed and delivered to Colonial Bank, N.A., a Commercial Promissory Note and Security Agreement in the amount of $285,000 ("Note").  On the same day, Daniel Todd McDonald and Defendant Denise T. McDonald executed and delivered a Real Estate Mortgage securing payment of the Note. The Mortgage was recorded on November 18, 2004 in the Probate Office of Clay County, Alabama.

Colonial Bank "inadvertently and erroneously" executed and recorded a Discharge of Mortgage ("Discharge") on August 4, 2008, which recited payment of the full amount of the indebtedness secured by the Mortgage and requested cancellation of the Mortgage. (Doc. 1, ¶ 13). At this time, however, the indebtedness secured by the Mortgage had not been paid in full and remained outstanding, due, and owing.  After Colonial recorded the Discharge, McDonald continued to make payments on the indebtedness secured by the Mortgage.

On August 14, 2009, the Alabama State Banking Department closed Colonial Bank and appointed the FDIC as Receiver. The FDIC entered into a Purchase and Assumption Agreement with Plaintiff BB&T, under which BB&T acquired many assets of Colonial Bank by virtue of an Assignment of Security Instruments and Other Loan Documents. BB&T also acquired an Allonge,[1] assigning to BB&T the Note in this case along with all of its modifications and renewals.

Under the terms of the Note and its renewals, Mr. Daniel McDonald promised to pay BB&T, as Colonial Bank's assignee, the full amount due on or before the maturity date of

---

[1]An "allonge" is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." BLACK'S LAW DICTIONARY (9th ed. 2009), allonge.

August 17, 2010. McDonald failed to pay the full amount due on the maturity date and BB&T sent him notices of default and of its intent to enforce the provisions of the Note and its renewal. McDonald has failed to pay the amount due under the Note and its renewals as of the date of Plaintiff's Complaint, May 3, 2013.

BB&T's Complaint contains five counts. Count I, for breach of contract, alleges that McDonald owes BB&T the principal balance of $176,505.81; plus interest in the amount of $74,397.22 as of April 29, 2013, which continues to accrue; late charges in the amount of $100.00; fees in the amount of $2,600.00; all costs and expenses of this action; and attorney's fees. Count II, for declaratory judgment, requests that the court reinstate each and every covenant, warranty and representation set forth in the Note, Mortgage and all other Loan Documents and order that the Mortgage is valid and enforceable and that BB&T is entitled to foreclose pursuant to Alabama Code § 6-2-220 *et seq.*, 28 U.S.C. § 2201 *et seq.*, and Federal Rule of Civil Procedure 57.

Count III, for reformation and reinstatement of the Mortgage, alleges that the Mortgage was satisfied and discharged through mutual mistake and requests that the court set aside the Discharge and reinstate the Mortgage pursuant to Alabama Code § 35-4-150 *et seq*. Count VI, for unjust enrichment, alleges that McDonald accepted and retained the benefit of the loan from BB&T and that BB&T is entitled to damages as a result of McDonald's unjust enrichment. Count V, for equitable mortgage, requests that the court impose an equitable mortgage for the indebtedness secured by the Mortgage that was erroneously cancelled.

II.   STANDARD OF REVIEW

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

3

factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555-56 (2007). In the Eleventh Circuit, the presence of an affirmative defense will generally not support a motion to dismiss. "Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). "Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004) (citing *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)).

When addressing the issue of federal jurisdiction, a court must consider the plaintiff's standing to assert a cause of action, "because standing is an element of the constitutional requirement of 'case or controversy,' [and] lack of standing deprives the court of subject matter jurisdiction." *In re Weaver*, 632 F.2d 461, 463 n.6 (11th Cir. 1980) (citing *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974)). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).

## III. LEGAL DISCUSSION

The individual Defendants assert seven defenses in their motions to dismiss that they claim are brought pursuant to Federal Rule of Civil Procedure 12(b). Several of their arguments, however, are substantive arguments that go to the *facts* of the case and are not appropriate for

this court to consider on a Rule 12(b) motion.

> Rule 12(b) allows a party to assert seven specific defenses:
>
> (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19.

The individual Defendants fail to show how their arguments regarding "Unilateral Mistake," "Release of Assignments," "Lack of Due Diligence," and "Payment of a Claim" fit within this Rule 12(b) rubric and the court does not readily see any connection. Therefore, these arguments will not be considered by the court at this time because they involve matters beyond the face of the complaint and are not appropriate for consideration under Rule 12(b).

Furthermore, although the individual Defendants title one of their arguments "Failure to State a Claim," the arguments under that heading actually go to the standing issue, and will be considered there. (Doc. 13, at 8). The individual Defendants fail to analyze the elements of each count of Plaintiff's Complaint in their "Failure to State a Claim" section; what the individual Defendants have failed to do, the court will not do for them.

    *A.    Standing*

The individual Defendants argue that BB&T lacks standing to bring any of the claims alleged in the Complaint. The court, which always evaluates the issue of federal jurisdiction, must consider the plaintiff's standing to assert a cause of action. "[B]ecause standing is an element of the constitutional requirement of 'case or controversy,' lack of standing deprives the court of subject matter jurisdiction." *In re Weaver*, 632 F.2d 461, 463 n.6 (11th Cir. 1980) (citing *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974)). Because standing is considered

jurisdictional, a dismissal on this basis is the equivalent of a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). Therefore, the individual Defendants properly make this argument in the 12(b) motions and the court will consider it.

To establish standing under Article III of the U.S. Constitution, a plaintiff must show (1) "an injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that "it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). The injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks and citations omitted). Also, the causal connection must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks, citations, and alterations omitted). "The line of causation between the [alleged] illegal conduct and injury" must not be "too attenuated." *Allen v. Wright*, 468 U.S. 737, 752 (1984).

The individual Defendants' standing argument is a factual attack because it is based upon allegations in the Complaint and references undisputed central documents. The individual Defendants first argue that BB&T lacks standing to bring this action because the Assignment (doc. 1, at Exhibit C) transfers only "interests . . . existing of record" and the Discharge caused the Mortgage to no longer be "of record." (Doc. 13, at 6). If BB&T has no interest in the Mortgage in question, then it cannot suffer injury from non-payment and, therefore, lacks standing to bring this suit.

The individual Defendants also argue that "Plaintiff has failed to state any activity which the Defendants' have allegedly engaged in which in anyway (sic) caused a harm or a loss of anytype (sic) or nature to the Plaintiff." (Doc. 13, at 8). This argument also asserts that BB&T cannot meet the injury in fact component of the standing requirement. See *Lujan*, 504 U.S. at 560.

In evaluating BB&T's standing, the court looks to state law concerning negotiable instruments. Section 7-3-104(a) of the Alabama Code defines a "negotiable instrument" as follows:

> [A]n unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>   (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>   (2) Is payable on demand or at a definite time; and
>   (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . .

ALA. CODE § 7-3-104(a).

The court concludes that based upon the face of the Complaint, the Note constitutes a negotiable instrument because it meets all the characteristics of negotiable instruments in § 7-3-104(a). The Note is "an unconditional promise . . . to pay a fixed amount of money" to the order of Colonial Bank for the benefit of Daniel McDonald "at a definite time" without any "undertaking or instruction" by Mr. McDonald to do anything in addition to the obligation to make payments. *Id.*; see also *Colburn v. Mid-State Homes, Inc.*, 266 So. 2d 865, 869 (Ala. 1972) (describing a mortgage note as a "negotiable note" and applying to it the law of negotiable instruments).

Under Alabama law, a person–or, as in this case, an entity–is entitled to enforce a negotiable instrument if it is the *holder* of the instrument. ALA. CODE § 7-3-301. A "holder" is the person "in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." ALA. CODE § 7-1-201(21). A person gains possession and becomes a holder of an instrument by virtue of an indorsement that transfers the instrument. See ALA. CODE §§ 7-3-203, 204. The Official Comments to Section 7-3-204 of the Alabama Code state that "[a]n indorsement on an allonge is valid even though there is sufficient space on the instrument for an indorsement." ALA. CODE § 7-3-204 (Official Comments).

In its Complaint, BB&T traces the transfer of the Note from Colonial Bank to BB&T and pleads that it "now owns and holds the Note." (Doc. 1, ¶ 21). It alleges that the Alabama State Banking Department appointed the FDIC as Receiver for Colonial Bank, to whom the Note was originally payable. BB&T attaches the Note (Exhibit A), the Assignment (Exhibit B), and the Allonge (Exhibit C) to its Complaint (doc. 1). These documents, together with the allegations in the text of the Complaint, sufficiently plead that BB&T is the holder of the Note with rights to enforce it. BB&T acknowledges the Discharge, but claims that it was executed and recorded "inadvertently and erroneously" and that the indebtedness remains "outstanding, due, and owing at this time." (*Id*., ¶ 13-14). Because the court must accept these well-pleaded factual allegations as true at this point in the litigation process, it finds that BB&T, as holder of the Note, can establish injury in fact through deprivation of the funds due under the Note and, therefore, has standing to bring suit under it.

The continued validity of the Note and BB&T's ability to enforce it against the McDonald Defendants is an issue for another day. BB&T will have to prove its allegations and

Defendants will have the opportunity to raise affirmative defenses, including the Discharge and the status of the Note in the record. At this point, however, the complaint sufficiently alleges that BB&T is the holder of the Note. The court will DENY the individual Defendants' motions to dismiss for lack of standing.

      B.      *Statutes of Limitations*

The individual Defendants assert that BB&T's claims are barred by the statute of limitations. Dismissal on statute of limitations grounds under Rule 12(b)(6) "is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845-46 (11th Cir. 2004) (citing *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)). The Complaint in this case includes the necessary dates to determine whether the relevant statutes of limitations bar BB&T's claims.

The individual Defendants argue that "[t]he best statute of limitation the Plaintiff could apply to this case is Section 6-2-37, Code of Alabama, 1975, which allows for a three year statute of limitations, as an action to recover money due." (Doc. 13, at 6). The individual Defendants apply this statute of limitations to all five claims, and argue that it started running upon the release of the Mortgage on August 4, 2008. *Id.* According to the individual Defendants, the suit was filed outside the applicable statue of limitations, as four years and nine months passed between August 2008 and the filing of this claim in May 2013. *Id*.

Section 6-2-37(1) of the Alabama Code sets a three year statute of limitations for "[a]ctions to recover money due *by open or unliquidated account . . .* " ALA. CODE § 6-2-37(1) (emphasis added). The individual Defendants' argument conveniently leaves out the important prepositional phrase in this statute—"by open or unliquidated account"—that drastically limits its

9

scope and makes it inapplicable to any of the five counts in BB&T's Complaint.  Under Alabama law, an "open or unliquidated account" is one where "a provision of the contract is left open for further negotiations." *Wal-Mart Stores, Inc. v. Anniston Dev. Co.*, 853 So. 2d 218, 221 (Ala. 2002) (holding that an action against a landlord to recover overpayment of a percentage of rent was not an action to recover money due by open or unliquidated account); see also *N. Ala. Ry. Co. v. Wilson Mercantile Co.*, 63 So. 34, 35 (Ala. Ct. App. 1913) ("A demand cannot be regarded as an open account where there is a contract certain and fixed in all its terms, which is the foundation of the claim.").

In this case, the Note has fixed terms with none left open for further negotiation. It definitively sets a principal amount of $285,000, a maturity date, a fixed interest rate of 7.160% per annum, and describes the poultry house equipment as the specific collateral provided. (Doc. 1, at Exhibit A). Furthermore, it states: "The Borrower acknowledges that this is the entire Agreement between the parties . . . and acknowledges receipt of a true and complete copy of this Agreement." *Id.* Under such circumstances, this Note cannot be considered an open or unliquidated account; therefore, the individual Defendants' proposed three-year statute of limitations does not apply.

The most relevant statute of limitations for Count 1 is the six-year statute of limitations found in § 7-3-118(a). As previously established, the Note is a negotiable instrument based upon the face of the Complaint. See ALA. CODE § 7-3-104(a). Under § 7-3-118(a), "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within *six years* after the due date or dates stated in the note . . ." ALA. CODE § 7-3-118(a) (emphasis added). Although the Note was originally due on May 14, 2005 (doc. 1, at Exhibit A),

10

the Complaint alleges that the subsequent renewals extended the maturity date to August 17, 2010. (*Id*. ¶ 22). Six years from August 17, 2010 is well beyond the date of filing in this case–May 3, 2013. Therefore, Count 1 for breach of contract, as an action to enforce a negotiable instrument, is not barred by the statute of limitations.

BB&T argues that the ten year period of § 6-2-33(2) applies to three of the other four counts, because those counts are "[a]ctions for the recovery of lands . . . ." ALA. CODE § 6-2-33(2). The court agrees as to Count 5 for an equitable mortgage, because the Alabama Supreme Court has addressed the issue directly. See *Barnett v. Waddel*, 27 So. 2d 1 (Ala. 1946) (applying the ten-year statute for actions for the recovery of lands in an equitable mortgage action).

But the court finds that the ten-year statute of § 6-2-33(2) is not the most applicable to Counts 2 and 3 for declaratory judgment, and reformation and reinstatement of a mortgage. Because actions for declaratory judgment and for reformation and reinstatement of a mortgage touch on contract, the court looks to the statutes of limitations that apply to "a normal contract arrangement":  §§ 6-2-34(4) and (5), setting a six-year statute to "[a]ctions founded on promises in writing not under seal"[2] and to "[a]ctions for the recovery of money upon a loan, [or] upon a stated or liquidated account . . ." *Johns v. First Ala. Bank*, 612 So. 2d 1235, 1236 (Ala. Civ. App. 1992). The parties do not present and this court does not find any examples of Alabama courts directly addressing the applicable statute of limitations for claims of declaratory judgment or reformation and reinstatement of a mortgage; therefore, the court adopts the most relevant statute

---

[2]In Alabama, for an instrument to be "under seal," "[t]here must be an intention on the part of the maker, recited in the body of the instrument, to the effect that the instrument is sealed." *Crane v. Pringle*, 378 So. 2d 721, 723 (Ala. 1979). The court sees no language in the Mortgage stating that it is under seal and, therefore, views it as a contract not under seal.

of limitation from the language of the Alabama Code directly—in this case, the six-year statute of § 6-2-34. Because BB&T filed Counts 2 and 3 well within the six year period following the maturity date of August 17, 2010, the court finds that the counts are timely and are not due to be dismissed. Even measuring from the individual Defendants' suggested date of August 4, 2008, the counts are timely. Alternatively, even if the court adopted BB&T's suggested statute of limitations for "[a]ctions for the recovery of lands . . .," the claims would still be timely under the ten-year statute applicable under § 6-2-33(2).

Finally, the court examines Count 4, for unjust enrichment. The Alabama Supreme Court has recently acknowledged that "there is a distinct absence of authority definitively stating the statute of limitations applicable to an unjust-enrichment claim." *Snider v. Morgan*, 113 So. 3d 643, 655 (Ala. 2012) (citing *Auburn University v. International Business Machines, Corp.*, 716 F. Supp. 2d 1114 (M.D. Ala. 2010)). The Alabama Supreme Court summarized the federal district court's approach in *Auburn University*, noting its status as nonbinding authority, but ultimately, chose not to decide the issue in that case, leaving the broader issue undecided in Alabama case law. *Snider*, 113 So. 3d at 655.

In *Auburn University*, the parties disagreed on which statute of limitations applied to the unjust enrichment claim in the case. The district court noted that Alabama state courts had not decided the issue, but found that "it would be improper to classify all unjust-enrichment claims as either tort claims . . . or implied-contract claims . . . ." The court concluded that it must look to the injury from which the claims arise and determine whether it could be classified as a tort injury or a contract injury. The court in *Auburn University* found that the claim at issue arose out of a tort injury and, therefore, applied the two year tort statute of limitations. *Id*. at 1118.

BB&T argues that this court should apply a similar analysis to that of the court in *Auburn University*, determining the appropriate statue of limitations according to the circumstances from which the unjust enrichment claim arises. (Doc. 28, at 14). Given the lack of binding authority on this issue, the court opts to follow this well-reasoned approach.

In this case, the parties do not argue that the unjust enrichment claim is similar to a tort action; rather, the debate is between the three-year statute of limitations period argued by the individual Defendants that applies to actions to recover money due by open or unliquidated accounts and the six-year period for negotiable instruments that BB&T argues should be applicable to this claim. The court has already established that the three-year statute for open or unliquidated accounts does not apply here. Therefore, the potential options are the six-year period for negotiable instruments, § 7-3-118, as suggested by BB&T, or the six- and ten-year periods under § 6-2-33 (2) and §§ 6-2-34(4) and (5), as previously noted. Because an unjust enrichment claim arises from a negotiable instrument, the court adopts the six-year statute of limitations of § 7-3-118. BB&T filed its claims within six years of the extended maturity date of the Note; therefore, the court finds that Count 4 is timely and should not be dismissed. As such, the court will DENY the individual Defendants' motions to dismiss for filing beyond the time period allowed by the statue of limitations.

## IV. CONCLUSION

For the reasons discussed above, the court will DENY the individual Defendants' motions to dismiss as to all counts. The court will issue an order simultaneously to that effect.

DONE and ORDERED this 18th day of October, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE